May it please the Court? Yes, and we have 20 minutes per side. And I would like to reserve, if I may, 7 minutes for rebuttal. I am authorized here by my client to concede the issue in our brief, contending that a newly discovered evidence would entitle him to a new trial. I would like to submit the issue dealing with the Speedy trial on the brief. What I would like to talk about is the Booker issue. Michael, I am By the way, did we have Appellant Grovier? Mr. Grovier died, Your Honor, and so he is, his case, I think, is rendered moot. Or I think he's been removed from the docket by reason of I don't think I saw anything telling me that. I knew he was very sick. Your Honor, Mr. Grovier passed away several months ago. Counselor Mr. Grovier filed a motion asking the case to be dismissed. Granted to have remanded. Okay, that's right. Okay. Okay, shall I proceed, Your Honor? Please proceed. Mr. Griffey was tried and convicted of a violation of the Federal Code dealing with narcotics, specifically methamphetamine was the drug in this case. Neither the indictment nor the verdict specified the amount of drugs involved. The appellant was not charged by reason of the indictment, and the jury did not find that he had a specific role in the offense. That is to say, he wasn't a leader, or at least the jury didn't find that. After his conviction, however, a pre-sentence investigator and the judge determined that the amount of drugs involved were such, 84 grams, that he was assigned two points, I mean 26 points, by reason of the amount of drugs, and two points by reason of his aggravating role in the offense. So that yielded a total of 28 points, combined with a criminal history of three, that yielded a range of 97 to 121 months. If he had been given an assignment from the guidelines based solely on the jury verdict, he would have had, and given his criminal history, he would have had a range, not of 97 to 121, but of 15 months to 21 months. However, he didn't object at the time of trial based on the Sixth Amendment, and so while his case on the merits appears to be identical to Booker, it is identical with Mr. Ameline, because he is left with the niddling problem of plain air. I think that the previous case that this Court heard began to address the plain air problem, and that's the problem that Mr. Griffey has as well. There's no question that the first two prongs of that test have been satisfied. In fact, an examination of the government's brief in this case will reveal that they have conceded the first two prongs of the test. It's the third prong that presents difficulty. It puts on the defendant the burden of demonstrating that his sentence may have been different, may have been less. Perhaps that's the test. I don't know that it is the test. There is some case law, I understand, that would hold that if it is the kind of an error which would justify a presumption of prejudice, because it inherently presents an exceptional difficulty for the defendant to show the error, to show the prejudice. That certainly is true in Griffey's case. It's true in Ameline's case. As the Court's questioning of the previous counsel demonstrated, we can't know probably what the judge would have done under an advisory regime as opposed to a mandatory regime. There certainly are some cases that suggest that the third prong on plain error affecting substantial rights requires showing of some reasonable probability things would be different. But what cases set this presumption that you're urging? I'm not sure. I think that there's some language in the United States Supreme Court case of Olano. I don't have the cite off the top of my head that sets that forth. But I think that the United — didn't the Ninth Circuit discuss the two kinds of error, one of them being structural, the other being those that are so plain to have a presumption of prejudice? I think that was discussed in Ameline, in fact. Salient to this case, though, is the fact that not only did counsel for the defendant operate under the presumption that the guidelines were mandatory, the judge operated under that presumption, everybody operated under that presumption. And so that whole system produced an unfair result. At sentencing hearing, everybody presumed that the sentence was going to be between 97 under 121 months. Counsel for the defendant argued that it should be at the low end, Your Honor, of that guideline range. There was no consideration for matters of his age, his work experience, his training, those matters that are contained in the guidelines under 5H. Are you saying that under Olana's comment that they're not addressing the cases where prejudice should be presumed, they're not talking about that, are you saying that, well, if you're sentenced under a whole different structure, for example, they sentence you under the law of Nigeria, we can presume that you were prejudiced and let somebody else show differently and that gets you beyond that step? Is that true? I would welcome that. Mr. Griffin would. I'm not sure. You alluded to Olano, and I was sort of looking at the Olano concept, that they're not deciding cases where the defendant can't make a specific showing, but prejudice should be presumed. Yes. I think I agree with that. I'm not sure I understand what you're asking me, Your Honor. I don't agree, then. It sounds good to me. It sounds good to me because at the time Mr. Griffin was sentenced, the mandatory nature of the guidelines, the whole apparatus of his trial and of his sentencing was under a mandatory system. The judge knew it was mandatory. The prosecutor knew it was mandatory. The defense lawyer knew it was mandatory. And they told Mr. Griffin it was mandatory. So in that sense, he'd just as well have been in Nigeria because the law, as the Supreme Court revealed it to us in Booker, was that it is discretionary. And in fact, if you look at the sentencing hearing in our supplemental excerpt to the record, you will see that defense counsel says, well, Your Honor, we understand that he's going to go to jail from 97 to 121. He says in effect. I'm not quoting. He's going to go to jail for 97 to 121 months. We would like it to be on the low end of the range, Your Honor. We know Mr. Fieke is about to get up and explain to the court why he thinks it should be in the high end of the range. But that's what everybody presumed. And that was not the law. And that was not. And he should not be penalized for that reason. I was interested to note that in one of the previous arguments, counsel for the government suggested that Judge Lodge gave this previous appellant a lot of breaks. He sentenced at the low end of the guidelines. He found a fewer amount of drugs so he could get to a lower place in the guidelines. Don't the guidelines really encourage the court to engage in kind of an artifice to play games with the law a little bit? I mean, shouldn't they have the discretion? Obviously, they should. The United States Supreme Court has said so. And so far as the fourth prong of the test, I think that this Court's reasoning in Ameline is exactly right, and that a failure to give a resentencing would bring the proceedings into disrepute, that would impugn the fairness of the proceedings, and that it would impugn the integrity of them. The other thing that I would like to say is that at Mr. Griffey's sentencing, very little time was spent on any of the matters that are covered by 353A, that previous clause in the statute to the one that was declared unconstitutional by the court. There's adequate evidence of those matters contained in the pre-sentence investigation report. Judge didn't consider them. Counsel didn't argue them. Counsel presumed that they would have no effect because the guidelines were mandatory. That substantially affected Mr. Griffey's rights. I think that's all that I have, unless the Court has any questions. No questions.  May it please the Court, Mr. Hoops. Your Honors, my name is Michael Fica. On behalf of the United States, I'm an assistant United States attorney. I was trial counsel for the United States in this case. I would note that although this case is assigned to Judge Windmill out of the District of Idaho because of the weight of the docket in the District of Idaho, Judge George from the District of Idaho was a sentencing judge and was a trial judge in this case, as well as sentencing judge for Mr. Griffey. Your Honors, addressing the issue of applicability of Booker and more specifically the Amline decision, Your Honors, obviously, and I've been in the courtroom, I had the benefit of hearing the previous oral argument. I certainly think the same position of my colleague, Mr. Stiles, with regard to our position on awaiting, in any circumstances, the petition for rehearing en banc with regard to the Amline 2 decision as it pertains to Mr. Griffey in this case. For the same reasons Mr. Stiles eloquated to this Court, I believe that a delay while essentially, as the Court stated, the death settles on that decision is appropriate. I won't belabor the point unless the Court wishes me to. Otherwise, with regard to the arguments of law as are outlined in the Amline decision and the petition for rehearing, although I'd be happy to respond to them, essentially, Your Honors, my position will be the position that the United States has taken with regard to the petition rehearing. What I'd like to do, though, Your Honor, is spend some time discussing this specific case, because in addition to the petition for rehearing and our argument that under any circumstances this Court should delay ruling on this case until that decision for rehearing has been made, I would submit, Your Honor, that this specific case can be distinguished from the Amline decision in several circumstances. And based upon that, under any circumstance, Your Honor, we'd submit that a remand is not appropriate. And essentially, this is one of those few, even under the Amline scheme, this is one of those few exceptional cases where remand is not warranted. There's essentially three areas that I believe are pertinent in distinguishing Mr. Griffey's case from the Amline decision, and I'd like to cover those three. First being, Your Honors, that in this case, not only was there not a – and as the Court knows, within Amline, another problem with the Amline decision was essentially the district judge in that case shifted the burden to the defense with regard to issues of sentencing. In our case, there was not just no shift in burden, but in fact, many of the – many of – much of the evidence, as it pertains to sentencing, parallels evidence that came out in trial. And that's the first distinction that I'd make, Your Honors. Our case – in our case, as opposed to the Amline case, there was a trial. Judge George sat and presided over that trial and had the benefit of receiving evidence and had the benefit of the jury's verdict with regard to that trial. The second distinction that I will make, as opposed to the Amline decision, is that in Mr. Griffey's case, there were multiple co-defendants, in fact, five co-defendants in our case. One of the issues raised by defense counsel during sentencing that Judge George spent some time discussing in sentencing was the need in determining a sentence within the guidelines, but essentially a need for a proportionate sentence relative to the other co-defendants in that case. Finally, Your Honor, I'd make a distinction with the Amline case, and I'll expand on all of these with the Court's permission here in a moment, in that in Mr. Griffey's case, the defense counsel for Mr. Griffey made a motion for a downward departure. That motion was made in a somewhat amorphous manner, essentially where counsel for Mr. Griffey argued Mr. Griffey's age and his necessity to take care of his ailing daughter required the Court to downward depart or invited the Court to downward depart. Judge George, and I'd like to quote later on in my argument, Judge George's statements at the sentencing hearing wherein he recognized that he had discretion to downward depart based upon defense's motion, but he felt that this case did not invite downward departure below the guidelines, even though, and he reiterated, and I'll quote Judge George here momentarily, even though he reiterated, he believed he had the discretion to do so. I think that creates a significant distinction from the Amline decision. Why? Your Honor, because essentially what Amline does, the global issue is that the problem, and this is the problem that creates the error from the beginning, and perhaps I'll go to that, which I think is my strongest point. First, the problem that creates the error that brings us here is the fact that the guidelines were discretionary, that they felt that they were bound by the guidelines. And so we don't need to be bound by the guidelines. And so you're not suggesting that on downward departures, they had discretion? Well, in this sense, I am. If you read it, and if the Court will allow me, I'll read the judge's quote, because in this case, the motion for the downward departure was fairly amorphous. It was essentially, Your Honors, this is a man who, yeah, he committed some crimes, but now he's taking care of his daughter, he's done some good things, he's trying to do some good things, essentially the motion paralleled the things that now the Court's invited to look at under 3553A. And in this case, Judge Short specifically said, and I quote from page 81 of the sentencing transcript, I've read that motion, and I believe that the Court has discretion to grant such a motion. It's not specifically denied by the guidelines, but I don't think that the circum – that this circumstances invites the Court to depart downward. Mr. Griffey's history, the history of this young woman, I'm not persuaded that circumstances invite the Court to be involved while acknowledging that I do have the discretion. So in essence, Your Honors, what we have is Judge George recognizing that there was some discretion to consider issues that are outlined in section 3553A. And he's – What the judge says, I don't think that takes him, which is what he has to be saying in the code, I don't think that takes him outside the heartland of the guidelines. And that – and that would be one way – Suppose he said that. Pardon me? Suppose he said that. I don't think it takes him outside of the heartland of the guidelines. My argument maybe wouldn't be as strong then, because he would – But that's what he said in it. He would essentially be addressing the heartland. But I think – He had to be saying that, didn't he? In one sense, yes, but I think – But if it took him outside the heartland, then – And that's absolutely true, although it's interesting that Judge George doesn't use those specific terms. He doesn't use the term from the Coon decision. He doesn't specifically say this is an extraordinary case outside the heartland. But he has to be thinking that, because he knows he can't depart unless it is. Well, I'm not sure that's necessarily true, Your Honor. He can depart if it's not outside the heartland? No, he can't. So he can't. To follow the literal law, although he certainly recognizes – Well, we have to assume that this is Judge Clark. That's fair, Your Honor. Although I still think – I have to add this. Of course, now, the question would still remain if he departed today and it's still in the heartland, whether it would be reasonable. Exactly, Your Honor. So you're almost back where you started. But we don't know the answer to that question yet. Judge Tashima anticipates the cutting edge of the law, but we don't have an answer yet. Let me ask – I have another question for you. Yes, Your Honor. I don't know if it's for me or my colleagues, whatever, but we had some circuit precedent that said we did not have jurisdiction to review a district court's failure to make a discretionary downward departure? Correct. I think. What's the status of that precedent post-Booker? In other words, if the guidelines are discretionary and we have jurisdiction to review whether a sentence is reasonable and in accordance with law, does that mean we have discretion to – we have jurisdiction to consider a failure to make a downward departure, putting the merits aside? I understand. In other words, in this case, there's an argument, depart downward because Mr. Booker's medical care or whatever, and the judge says I've thought about it, I'm not going to do it. I would have thought under the prior precedent we might not have jurisdiction even to review that. But it seems to me under Booker, after Booker, we probably should have jurisdiction to review it for reasonableness. But what's the government's point of view on it? Well, and, Your Honor, let me preface my response by saying I do not have authority. Don't you speak for John Ashcroft? No. For Mr. Gonzales. Your Honor, with all due respect, I do not. Although I will say this, Your Honor, if the court will allow me, while I don't have authority, I can. I was kidding because I thought it would be safe for you to speak for Mr. Ashcroft now. I won't pretend to speak for Mr. Ashcroft either while he was my boss or as he stands a private citizen now. I will say that I've given that specific question of the Court some thought and, in fact, had some lengthy discussions in a social setting with several defense bar members that I practice regularly with what will the impact be. And we've specifically talked to that issue. And that's sort of an interesting twist because while I agree that the Court probably didn't have the ability to review prior to Booker, I think it opens the door now, although in any respect the Court will be reviewing essentially under a reasonableness standard, regardless of whether it was an accepted downward departure as before or not. Now it sort of opens everything up, but it opens everything up under the reasonableness standard now, which becomes essentially a double-edged sword. Kennedy, including the reasonableness of a denial of a downward departure. Absolutely. Absolutely, Your Honor. Now, we also, of course, have this precedent like Agostini v. Felton says we're not supposed to or I know it's Agostini's in it. I don't know if the Felton's right. Says we're not supposed to anticipatorily overrule a Supreme Court decision if it has been undermined by a later Supreme Court decision, which we applied like in, I guess, Pacheco, Zepeda, and Quintana, Quintana as to the idea that prior convictions could be determined by the judge, whatever was said in Apprendi or Blakely or whatever. So now, is there a Supreme Court precedent on this issue of no jurisdiction to assess a denial of downward departure? Your Honor. Or is that just like Ninth Circuit precedent that we could put to the side if we thought it had been undermined by Booker? Your Honor, I apologize. I don't know if there's Supreme Court precedent on that. I have to presume that in the face of the post-Booker cases that there is not. But the controlling precedent that can't be distinguished at this point, but I just don't know. Okay. That's helpful. Thank you. Of course, the Congress didn't. I mean, the Court did not knock out the statute. Absolutely. That says that defendants can appeal refusals, can appeal going up and the prosecution can appeal going down, but does not give the right to appeal to the other party otherwise. Absolutely. So that statute still stands. Yes. And the Court did not abolish that, I fear. That's correct. And that potentially creates a problem, which goes back. And again, I didn't want to spend a lot of time on this, Your Honors, but it goes back to, as the Court so eloquently put it, the dust hasn't settled yet. And until that settles, we really don't know. Your Honors, with the Court's permission, I'd like to draw just two other distinctions to the Amline decision with regard to this case. And again, I recognize that one of the problems, and it really is the, I guess, the cloud that hangs over my argument that I would love to avoid and I can't, which is, I anticipate the Court's question to any point I make, we just don't know for sure. And I have to concede, we just truly do not know for sure. But I would make several other distinctions, Your Honor. The first additional distinction I would make is, in Amline, there were not co-defendants. In this case, we had several co-defendants, Your Honors. And ultimately, the defendant was sentenced in a guideline range based upon 84 grams of methamphetamine. The defendant took some extensive or spent some time during sentencing arguing that the judge should sentence the defendant at a guideline range based on 84 grams and not more because all the other defendants were sentenced within that range, too. And, Your Honors, I believe that that becomes applicable here with regard to whether or not we can speculate, and again, I understand it's speculation on whether it's reasonable that the defendant would receive a lesser sentence on remand. I think some weight goes to the fact that the Court will consider that we essentially had four other defendants whose cases are not before this Court, whose sentencing stand now, and all of their sentences were commensurate with that same level or range. It seems highly unlikely, Your Honors, that the Court's going to accept on remand this case and say, well, essentially we sentenced four of the defendants under a rubric based upon a guideline, albeit advisory now, based upon 84 grams, but this defendant we're not going to attribute that amount of methamphetamine to. So I think the co-defendant issue becomes a distinction. I think the final distinction, Your Honor, becomes with regard to the fact that that – and I realize that it's not specifically an issue given Booker and the burden or, I'm sorry, yeah, correct, the burden of proof with regard to sentencing issues. But I would note, Your Honors, in this case, as opposed to Mr. Ameline's case, in Mr. Ameline's case, and counsel pointed this out, he essentially pled guilty, but he pled guilty not to the amount of drugs that the government said he should be attributed to, but to, I believe, he pled and admitted to simply a detectable amount. In this case, the amount of drugs that were the basis of the level of sentence that Mr. Griffey received were determined primarily based upon the testimony of several co-defendants, Ms. Haig, Mr. Montgomery, and Mr. Wayland. I note that we went to trial in this case, and the trial hinged also on the testimony of those three witnesses. We had a fact finder at trial, the jury, who convicted Mr. Griffey primarily on the testimony of those three witnesses. That same testimony is where the judge determined the offense level based upon 84 grams. So essentially, Your Honor, and again, I realize that the standard of proof is not necessarily an issue post-Booker, but I think it's worthy of noting. It seems to me I could stand here and at least suggest that during trial and into the sentencing proceeding, I did provide proof beyond a reasonable doubt as to the quantities attributable to Mr. Griffey, as demonstrated by that the fact that that same testimony convicted Mr. Griffey based upon the jury verdict of guilty. So even if we were under a reasonable doubt standard, which, again, under Booker were not, I think that I could make an argument that this sentence was nevertheless reasonable. Again, Your Honors, I concede that to some extent we have to speculate. We have to speculate. But it seems reasonable, and I know that even Ameline recognizes, that there could be some exceptional cases where you could look at the record and have more than just a pretty good idea what the sentencing judge would do under the new Booker scheme. I would submit in this, this is one of those exceptional cases that there are distinctions, Your Honor. There were multi-defendants in this case. There was a different presentation of evidence in that the evidence in this case was different, and the jury convicted the defendant. And finally, Your Honor, I'd submit that in this case, as opposed to Ameline, there was a motion for downward departure wherein the judge recognized he had discretion to downward depart and chose not to. Felt that it wasn't, and I would use the term he felt that it wasn't reasonable, and maybe I'm putting terms in Judge George's mouth that I shouldn't, but he felt it wasn't reasonable to downward depart. So in any respect, I distinguish this case from Ameline. Nevertheless, Your Honor, if the Court determines that Ameline does control in this case, we would request that the Court reserve ruling in this case pending a decision on the petition for rehearing en banc in Ameline. I'd be happy in my few short seconds to respond to any questions the Court has. No questions here.  Thank you, Your Honor. At the risk of making a fool of myself, I think that the Fanfan's case in the Booker decision did deal with the Court's jurisdiction to hear a government appeal. I mean, the government in the sense, in essence, was told they could appeal Fanfan's sentence. And so I think that Booker does give this Court that jurisdiction in answer to your question to Mr. Fica. I'm not going to address the other matters, some of the matters that Mr. Fica talked about, but I think that it's worth noting that while we can't know what a sentencing judge would do under a discretionary regime as opposed to a mandatory regime, isn't it fair to say that there's a reasonable probability, we don't know what it is, but there's a reasonable probability that the result would be different under an advisory regime than under a mandatory regime? I don't know that I can show that any differently than a host of other defendants who have Booker issues like we do. I can't define what was in the mind of Judge George, but I can say with some confidence, I think, that his mindset would have been different. The standard would have been different. And because of that, my client's substantial rights, his constitutional rights have been violated, and the only remedy possible is a resentencing. One of the co-defendants in Mr. Griffey's case, by the way, was Mr. Grobier, who was also on appeal, and he would have been happy to join me, I'm sure, in suggesting to the Court that a less stringent third prong of the plain error test be applied. Regardless of the number of defendants, the Constitution of the United States is applicable to every defendant, whether they're on trial by themselves or with a whole herd of people. And we would urge the Court to grant the relief mandated by Booker, enunciated eloquently by Ameline, and remand this case to the District Court for resentencing consistent with Booker. Thank you, Your Honor. Thank you, Mr. Oakes. U.S. v. Griffey shall be submitted. We thank both counsel for their excellent arguments, and thank you for traveling from Idaho to enlighten us today. Thanks very much. So we will recess.
judges: Fernandez, Tashima, Gould